UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN MENGES, GAYLORD RICHARD QUAYLE, CAROL MUZZARELLI, KELLY HUBBLE, MELANIE ANTUMA, JIM LYNCH AMANDA VARNER,<br><br>Plaintiffs,<br><br>-vs-<br><br>ROD R. BLAGOJEVICH, GOVERNOR; DEAN MARTINEZ, ACTING SECRETARY OF THE ILLINOIS DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION; and DANIEL E. BLUTHARDT, ACTING DIRECTOR OF ILLINOIS DIVISION OF PROFESSIONAL REGULATION, IN THEIR OFFICIAL CAPACITIES,<br><br>Defendants. | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF<br><br>Civil Action No. _____ |

INTRODUCTION

1. This is an action seeking a declaration of invalidity and an injunction against enforcement of a recently adopted section of the Illinois Administrative Code [hereafter "the Rule"] governing the dispensing of certain drugs. 68 Ill. Admin. Code § 1330.91(j), attached hereto as Exhibit A. The plaintiffs, pharmacists licensed in Illinois, have a religious and moral objection to dispensing a small fraction (less than 1%) of the drugs the Rule requires them to dispense. Five of the plaintiffs have been fired from their jobs because of the Rule. All of the plaintiffs are threatened by the Rule.

1

2. Because the Rule, on its face and as applied by the defendants, violates and substantially burdens fundamental rights enjoyed by the plaintiffs under federal and state law, plaintiffs bring the present action.

## JURISDICTION AND VENUE

3. The jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331, 1343, 1367, 2201 and 2202, and under 42 U.S.C. §§ 1983 and 1988.

4. Venue is appropriate in the Central District of Illinois under 28 U.S.C. § 1391(b)(1) because all defendants reside in the Central District of Illinois.

## IDENTIFICATION OF PARTIES

5. The plaintiffs are pharmacists licensed in the State of Illinois who work at (or until being terminated from employment by employers enforcing the challenged Rule worked at) Division I pharmacies.

6. Plaintiffs, Menges, Quayle, Muzzarelli, Hubble, and Antuma were employed by Walgreens, Inc. at the time the Rule was promulgated. They have since been fired because of the Rule. They are referred to hereafter as "the Walgreens plaintiffs" or "the Walgreens pharmacists."

7. Plaintiffs Lynch and Varner are currently employed at Division I pharmacies. They are referred to hereafter as "the remaining plaintiffs" or "the non-Walgreens plaintiffs."

8. The defendants, and each of them, are duly elected or appointed government officials of the State of Illinois. They are responsible for the promulgation, interpretation, application, and enforcement of the challenged Rule. They are sued in their official capacities.

## FACTUAL ALLEGATIONS

9. On April 1, 2005, the defendants, in their official capacities, promulgated an Emergency Amendment to Section 1330.91 of Title 68 of the Illinois Administrative Code governing the regulation of Division I pharmacies.

10. On or about August 25, 2005, the Emergency Amendment became permanent in the form of the Rule being challenged herein.

11. The Rule requires all Division I pharmacies to dispense "all FDA-approved drugs or devices that prevent pregnancy," defined by the Rule as "contraceptives." This includes drugs and devices known as the "morning-after pill," "Plan B," and "emergency contraceptives," which plaintiffs contend are designed to work with a significant abortifacient mechanism of action.

12. Since the introduction to the market of the "morning-after pill" and "Plan B," such drugs have accounted for substantially less than 1% of the prescriptions presented to the plaintiffs.

13. All of the plaintiffs hold certain religious beliefs that prohibit them from dispensing the "morning-after pill" and "Plan B" and any other drugs with a significant abortifacient mechanism of action.

14. On the day of the announcement of the promulgation of the Emergency Amendment, the defendant Governor explained that the Amendment was prompted by the actions of individual pharmacists in Chicago and elsewhere who had declined to fill prescriptions because of their religious and moral opposition to the drugs in question.

15. At the same time, the defendants adopted (by incorporating into an official press release) a statement by the president of NARAL Pro-Choice America to

the effect that the target of the Emergency Amendment was "the anti-choice movement" and its position on the drugs in question.

16. In April, 2005, shortly after the promulgation of the Emergency Amendment, each of the plaintiffs herein received letters from the Department of Financial and Professional Resolution, sent to their home addresses, addressed "Dear Illinois Pharmacist," and informing them of the provisions of the Emergency Amendment.

17. On information and belief, similar letters were sent to all licensed Illinois pharmacists; recipients were not limited to only pharmacy owners or pharmacists-in-charge at Division I pharmacies.

18. On or about April 26, 2005, on information and belief, defendant Governor sent a letter addressed "Dear Physicians" to every Illinois physician.

19. The "Dear Physicians" letter informed its recipients of the Emergency Amendment and explained that the new regulation was a response to the actions of individual pharmacists "opposed to the use of emergency contraceptives."

20. The "Dear Physician" letter further stated that "pharmacists and pharmacies should not stand in the way of a doctor's decision on how to best treat a patient." The letter requested that its recipients notify the Governor (via a toll-free number) anytime an Illinois pharmacist refused a prescription for emergency contraceptives.

21. Also, in April 2005, defendant Governor sent a letter to the executive director of an organization called "Family-Pac." In said letter, defendant wrote that the Emergency Amendment was a response to the actions of "pharmacists who

disagree with the use of birth control." The letter advised its recipient that, should an individual pharmacist refuse to fill a birth control prescription, "their employer faces significant penalties" and, further, that the defendants "fully intend to enforce the law" by "any and all necessary steps."

22. On April 29, 2005, the Joint Committee on Administrative Rules of the Illinois General Assembly published a Proposed Regulation described as similar to and a "companion" to the Emergency Amendment and purporting to be a permanent version of the Emergency Amendment. The Proposed Regulation is set forth under the heading "Pharmacists," and concludes with the statement: "Those affected by this rulemaking include pharmacists."

23. Since April, 2005, the office of defendant Governor has issued numerous press releases in which the effect and purpose of the Rule is described as requiring individual pharmacists to dispense contraceptives.

24. On August 25, 2005, the Joint Committee on Administrative Rules formally adopted the Rule being challenged herein thus making permanent the pertinent provisions of the Emergency Amendment. The Rule is codified at 68 Ill. Admin. Code § 1330.91(j).

25. Following the promulgation of the Emergency Amendment, Walgreens, Inc., the employer of plaintiffs Menges, Quayle, Muzzarelli, Hubble and Antuma, issued multiple directives to its pharmacy employees that the Emergency Amendment applied to them as individuals, that compliance with the Emergency Amendment was mandated by law, and that failure to strictly comply with the law could result in disciplinary action.

26. Before and after the adoption of the Permanent Rule, the Walgreens plaintiffs notified their employer of their religious objections to dispensing certain drugs covered by the Rule and requested accommodation of their religious beliefs and moral convictions.

27. On or about September 13, 2005, Walgreens, Inc. terminated the employment of plaintiff Antuma for failing to dispense a "Plan B" prescription in violation of the challenged Rule.

28. On or about September 15, 2005, the defendant Department filed disciplinary actions against three Illinois pharmacies alleging violations of the Rule as a result of the actions of individual pharmacists employed at those pharmacies. Two of the pharmacies in question are owned by Walgreens, Inc.

29. In November, 2005, Walgreens, Inc. demanded that each of its pharmacists agree in writing to a new company policy requiring each pharmacist to dispense the "morning-after pill," "Plan B," and/or other "emergency contraceptives" purportedly as required by the challenged Rule.

30. Walgreens pharmacists who refused to agree to the policy were placed on "unpaid, indefinite suspension." These include plaintiffs Menges, Quayle, and Hubble. Plaintiff Muzzarelli, who was already on a personal leave of absence, also refused to agree to the policy and was denied permission to return to her previous employment.

31. On December 1, 2005, on a nationally broadcast television program, in responding specifically to questions posed to him regarding the firing of plaintiffs Menges, Quayle and Hubble, defendant Blagojevich stated that Walgreens' actions were in compliance with the Rule and that, in terminating

the plaintiffs for asserting their religious objections to dispensing the drugs in question, Walgreens was "following the law."

32. Subsequent statements by defendant Blagojevich's spokespersons have reiterated defendant's interpretation of the Rule that pharmacists at Division I pharmacies have no choice but to dispense the drugs in question and that Walgreens' firing of the plaintiffs was "appropriate."

33. Plaintiffs Lynch and Varner, while not being (to date) subjected to adverse employment action, have also been nevertheless substantially burdened in their exercise of their religious beliefs by operation of the Rule. This is especially so in light of the defendants' statements of approval for the actions of Walgreens and the defendants' publicly stated interpretation of the Rule.

34. As a direct result of the defendants' enactment, promulgation, enforcement and threatened enforcement of the Rule, each of the plaintiffs has been deprived of fundamental constitutional and statutory rights under federal and state law. Such deprivation is continuing.

35. The enactment, promulgation, enforcement and threatened enforcement of the Rule has caused and continues to cause irreparable harm to the plaintiffs for which they have no adequate remedy of law.

36. Defendants are "persons" for purposes of their complaint, as this term is used in 42 U.S.C. § 1983.

37. All of the conduct of the defendants as set forth in this complaint constitutes conduct "under the color of state law" as that phrase is used in 42 U.S.C. § 1983.

## COUNT I

### FREE EXERCISE VIOLATION

38. Plaintiffs incorporate by reference herein all preceding paragraphs.

39. The Rule imposes substantial burdens and penalties on the plaintiffs based on their exercise of religion.

40. The Rule, which was enacted with the express purpose of suppressing the religious practice of persons such as plaintiffs herein, and which contains numerous exemptions for conduct based on secular and non-religious motivations, is neither neutral nor generally applicable.

41. The Rule violates plaintiffs' rights secured to them by Amendments I and XIV to the U.S. Constitution and protected from abridgement by 42 U.S.C. § 1983, and is therefore null and void and unenforceable.

## COUNT II

### TITLE VII SUPREMACY CLAUSE VIOLATION

42. Plaintiffs incorporate by reference herein all preceding paragraphs.

43. The Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, states:

> It shall be unlawful employment practice for an employer –
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

44. The Civil Rights Act of 1964, 42 U.S.C. § 2000(j), states:

    > The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

45. Under the provisions of 42 U.S.C. § 2000e-7, any state law "which purports to require or permit the doing of any act which would be an unlawful employment practice under this subchapter" is presumptively invalid and unenforceable under the Supremacy Clause of Article VI of the U.S. Constitution.

46. The Rule challenged herein, on its face and as interpreted and applied by the defendants, purports to require or permit Illinois employers to take adverse employment action against individual pharmacists such as plaintiffs based on their religious beliefs and practices, "an unlawful employment practice" under Title VII, 42 U.S.C. § 2000e-2 and 2000e(j).

47. As such, the Rule is null, void and unenforceable under Title VII's preemption provision, 42 U.S.C. § 2000e-7 and Article VI of the U.S. Constitution.

## COUNT III

### CONFLICT WITH HEALTH CARE RIGHT OF CONSCIENCE ACT, 745 ILL. COMP. STATS. 70/1 ET SEQ.

48. Plaintiffs incorporate by reference herein all preceding paragraphs.

49. The Illinois Health Care Right of Conscience Act states that it is the policy of the State of Illinois "to respect and protect the right of conscience in, the delivery of, arrangement for, or payment of health care services and medical care . . . and to prohibit all forms of discrimination, disqualification, coercion, disability or imposition of liability upon such persons or entities by reason of

9

their refusing to act contrary to their conscience or conscientious convictions in refusing to . . . deliver . . . health care services and medical care." 745 Ill. Comp. Stats. 70/2.

50. Section 5 of the Act makes it "unlawful for any person, public or private institution, or public official to discriminate against any person in any manner, including but not limited to, licensing, hiring, promotion, transfer, staff appointment, hospital, managed care entity, or any other privileges, because of such person's conscientious refusal to receive, obtain, accept, perform, assist, counsel, suggest, recommend, refer or participate in any way in any particular form of health care services contrary to his or her conscience." 745 Ill. Comp. Stats. 70/5.

51. Section 3 of the Act, "Definitions," includes the following:

 (a) "Health care" means any phase of patient care, including but not limited to, testing; diagnosis; prognosis; ancillary research; instructions; family planning, counseling, referrals, or any other advice in connection with the use or procurement of contraceptives and sterilization or abortion procedures; medication; or surgery or other care or treatment rendered by a physician or physicians, nurses, paraprofessionals or health care facility, intended for the physical, emotional, and mental well-being of persons;

(c) "Health care personnel" means any nurse, nurses' aide, medical school student, professional, paraprofessional or any other person who furnishes, or assists in the furnishing of, health care services;

(e) "Conscience" means a sincerely held set of moral convictions arising from belief in and relation to God, or which, though not so derived, arises from a place in the life of its possessor parallel to that filled by God among adherents to religious faiths. 745 ILCS 70/3.

52. Because the Rule, both on its face and as applied and interpreted by defendants, has the purpose and effect of compelling individuals to participate in forms of health care services contrary to their consciences,

it is in direct and clear conflict with the Health Care Right of Conscience Act and is thus null, void, and unenforceable.

## COUNT IV

### CONFLICT WITH ILLINOIS RELIGIOUS FREEDOM RESTORATION ACT

53. Plaintiffs incorporate by reference herein all preceding paragraphs.

54. The Rule requires the plaintiffs to violate their sincerely held religious beliefs as a condition of keeping their employment and/or maintaining their licenses to practice pharmacy in the State of Illinois.

55. In addition, the Rule renders pharmacists such as these plaintiffs virtual second class citizens by substantially interfering with their ability to obtain and maintain employment since current and prospective employers now view them on less than equal footing than non-objecting pharmacists, i.e., the Rule renders plaintiffs and similarly situated pharmacists "problem" employees for whom special accommodations must be made.

56. The Illinois Religious Freedom Restoration Act, 775 Ill. Comp. Stats. 35/1 prohibits the government from substantially burdening a person's exercise of religion unless it demonstrates that the application of the burden is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest.

57. The Rule substantially burdens plaintiffs' exercise of religion, because it forces the plaintiffs to choose between adhering to core religious beliefs and practices and risking professional discipline and sanctions and adverse employment action, does not further a compelling governmental interest, and is not the least restrictive means to further any such purported interest.

58. The Rule violates the Illinois Religious Freedom Restoration Act and is thus null, void and unenforceable.

PRAYER FOR RELIEF

WHEREFORE, the plaintiffs request that:

A. This Court render a Declaratory Judgment, adjudging and declaring that:

   1) The Rule, codified at 68 Ill. Adm. Code § 1330.91(j) violates the Free Exercise Clause of U.S. Constitution Amendment I and is, therefore, null, void, and without legal effect;

   2) The Rule, codified at 68 Ill. Adm. Code § 1330.91(j) violates Title VII, Civil Rights Act of 1964, 42 U.S.C. § 2000e(j) and is therefore preempted by Title VII and/or Article VI of the U.S. Constitution and is therefore null, void, and without legal effect;

   3) The Rule, codified at 68 Ill. Adm. Code § 1330.91(j) violates the Illinois Health Care Right of Conscience Act, 745 ILCS 70/1 et seq. and is therefore null, void, and without legal effect.

   4) The Rule, codified at 68 Ill. Adm. Code § 1330.91(j) violates the Illinois Religious Freedom Restoration Act, 775 ILCS 35/1 and is therefore null, void, and without legal effect.

B. This Court issue a preliminary and permanent injunction prohibiting the defendants from enforcing the Rule, codified at 68 Ill. Adm. Code § 1330.91(j).

C. This Court award plaintiffs the costs of this action and reasonable attorney's fees pursuant to 42 U.S.C. § 1988, Section 12 of the Illinois Right of Conscience Act, and Section 20 of the Illinois Religious Freedom Restoration Act.

D.   This Court award such other and further relief as it deems equitable and just.

>   PLAINTIFFS: JOHN MENGES, GAYLORD RICHARD QUAYLE, CAROL MUZZARELLI, KELLY HUBBLE, MELANIE ANTUMA, JIM LYNCH, and, AMANDA VARNER
>
>   By:   LaBarre, Young & Behnke and American Center for Law and Justice
>
>
>   By_____/s/ Dawn D. Behnke_____
>        One of Their Attorneys

Attorneys' Addresses:
DUANE D. YOUNG
Registration No.: 3091457
DAWN D. BEHNKE
Registration No.: 6255617
LaBARRE, YOUNG & BEHNKE
1300 South Eighth Street
Suite Two
Springfield, Illinois 62703
Telephone: (217) 544-8500
Facsimile: (217) 544-6200

    -and-

Francis J. Manion
Geoffrey R. Surtees
AMERICAN CENTER FOR LAW AND JUSTICE
6375 New Hope Rd.
New Hope, KY 40052
Telephone: (502) 549-7020
Facsimile: (502) 549-5252

# EXHIBIT A

1330.91 Amendment

j) Duty of Division I Pharmacy to Dispense Contraceptives

    1) Upon receipt of a valid, lawful prescription for a contraceptive, a pharmacy must dispense the contraceptive, or a suitable alternative permitted by the prescriber, to the patient or the patient's agent without delay, consistent with the normal timeframe for filing any other prescription. If the contraceptive, or a suitable alternative, is not in stock, the pharmacy must obtain the contraceptive under the pharmacy's standard procedures for ordering contraceptive drugs not in stock, including the procedures of any entity that is affiliated with, owns, or franchises the pharmacy. However, if the patient prefers, the prescription must either be transferred to a local pharmacy of the patient's choice under the pharmacy's standard procedures for transferring prescriptions for contraceptive drugs, including the procedures of any entity that is affiliated with, owns, or franchises the pharmacy. Under any circumstances an unfilled prescription for contraceptive drugs must be returned to the patient if the patient so directs.

    2) For the purposes of this subsection (j), the term "contraceptive" shall refer to all FDA-approved drugs or devices that prevent pregnancy.

    3) Nothing in this subsection (j) shall interfere with a pharmacist's screening for potential drug therapy problems due to therapeutic duplication, drug-disease contraindications, drug-drug interactions (including serious interactions with nonprescription or over-the-counter drugs), drug-food interactions, incorrect drug dosage and duration of drug treatment, drug-allergy interactions, or clinical abuse or misuse, pursuant to 225 ILCS 85/3(q).

(Source:  Amended at 29 Ill. Reg. 13639, effective August 25, 2005)