## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JOHN MENGES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.  05-3307 |
| | ) | |
| ROD R. BLAGOJEVICH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on the Defendants' Motion to Dismiss the Amended Complaint (d/e 13) and Defendants' Motion to Dismiss Walgreens' Third Party Complaint (d/e 27).  The Plaintiffs are licensed pharmacists in Illinois.  The Defendants are the Governor of Illinois and other state officials.  Third Party/Intervenor Walgreen Co. (Walgreens) is a corporation that operates pharmacies throughout the United States, including Illinois.  The Plaintiffs allege in their Amended Complaint that the Defendants promulgated a rule (Rule) to force them to dispense drugs known as the "morning after pill," "Plan B," and "emergency contraceptives" (hereinafter collectively referred to as "Emergency

1

Contraceptives"), in violation of the Plaintiffs' constitutional right to exercise freely their religious beliefs and in violation of Title VII of the Civil Rights Act of 1964 (Title VII). U.S. Const. Amend I; 42 U.S.C. §§ 2000e-2 & 2000e-7. <u>Amended Complaint for Declaratory and Injunctive Relief (d/e 11) (Amended Complaint)</u>. Several of the Plaintiffs were formerly employed by Walgreens. They allege that they have lost their jobs at Walgreens because they would not comply with Illinois' new Rule. Walgreens alleges in its Third Party Complaint that it has been subjected to administrative enforcement actions by the state for not complying with the Rule and civil suits by employees for complying with the Rule. Walgreens seeks a declaratory judgment that the Rule violates Title VII, and also a declaratory judgment that its previous policies conform to both Title VII and the Rule. <u>Third Party/Intervenor Walgreen Co.'s Complaint for Declaratory and Injunctive Relief (d/e 25) (Third Party Complaint)</u>. The Defendants now move to dismiss. As explained below, the Plaintiffs state claims. Walgreens states a claim for some of the relief sought, but the Court must dismiss the requests for a declaratory judgment that its policies comply with either Title VII or the Rule. The Motion to Dismiss the Amended Complaint is DENIED, and the Motion to Dismiss the Third Party

Complaint is ALLOWED in part and DENIED in part.

STATEMENT OF FACTS

For purposes of the Motions, the Court must accept as true all of well-pleaded factual allegations in the Amended Complaint and the Third Party Complaint and draw all inferences in the light most favorable to the Plaintiffs and Walgreens.  Hager v. City of West Peoria, 84 F.3d 865, 868-69 (7th Cir. 1996); Covington Court, Ltd. v. Village of Oak Brook, 77 F.3d 177, 178 (7th Cir. 1996).  The Court may also consider matters of which the Court can take judicial notice, such as public records from other court proceedings.  Menominee Indian Tribe of Wisconsin v. Thompson, 161 F.3d 449, 456 (7th Cir. 1998).  The Court should only grant the Motions to Dismiss if it appears beyond doubt that the Plaintiffs and Walgreens can prove no set of facts that would entitle them to relief.  Doherty v. City of Chicago, 75 F.3d 318, 322 (7th Cir. 1996).

According to the Amended Complaint, Plaintiffs John Menges, Gaylord Richard Quayle, Carol Muzzarelli, Kelly Hubble, and Melanie Antuma (Discharged Plaintiffs) are licensed pharmacists in Illinois who previously worked as pharmacists at Division I pharmacies operated by Walgreens.  Plaintiffs Jim Lynch and Amanda Varner allegedly are licensed

3:05-cv-03307-JES-BGC   # 30   Page 4 of 28

Illinois pharmacists who currently work for other Division I pharmacies. Division I pharmacies are pharmacies that engage in general community pharmacy practice and that are open to, or offer pharmacy services to, the general public.  68 <u>Ill. Admin. Code</u> § 1330.5.

The Defendants are duly-elected or appointed government officials of the state of Illinois.  Defendant Rod Blagojevich is Governor.  Defendant Dean Martinez is Acting Secretary of the Illinois Department of Financial and Professional Regulation (Department), and Defendant Daniel E. Bluthardt is Acting Director of the Department's Division of Professional Regulation.  The Plaintiffs allege that the Defendants are responsible for the promulgation, interpretation, application, and enforcement of the regulation at issue.

On April 1, 2005, the Defendants promulgated an Emergency Amendment to § 1330.91 of Title 68 of the Illinois Administrative Code. The Emergency Amendment became permanent in the form of a rule on August 25, 2005.  The Rule states:

j) Duty of Division I Pharmacy to Dispense Contraceptives

1) Upon receipt of a valid, lawful prescription for a contraceptive, a pharmacy must dispense the contraceptive, or a suitable alternative permitted by the

prescriber, to the patient or the patient's agent without delay, consistent with the normal timeframe for filing any other prescription. If the contraceptive, or a suitable alternative, is not in stock, the pharmacy must obtain the contraceptive under the pharmacy's standard procedures for ordering contraceptive drugs not in stock, including the procedures of any entity that is affiliated with, owns, or franchises the pharmacy. However, if the patient prefers, the prescription must be transferred to a local pharmacy of the patient's choice under the pharmacy's standard procedures for transferring prescriptions for contraceptive drugs, including the procedures of any entity that is affiliated with, owns, or franchises the pharmacy. Under any circumstances an unfilled prescription for contraceptive drugs must be returned to the patient if the patient so directs.

2) For the purposes of this subsection (j), the term "contraceptive" shall refer to all FDA-approved drugs or devices that prevent pregnancy.

3) Nothing in this subsection (j) shall interfere with a pharmacist's screening for potential drug therapy problems due to therapeutic duplication, drug-disease contraindications, drug-drug interactions (including serious interactions with nonprescription or over-the-counter drugs), drug-food interactions, incorrect drug dosage or duration of drug treatment, drug-allergy interactions, or clinical abuse or misuse, pursuant to 225 ILCS 85/3(q).

68 Ill. Admin. Code § 1330.91(j).[1]   As quoted above, the term

_____

[1]The Court recognizes that the Food and Drug Administration has decided that Emergency Contraceptives will be available over-the-counter without a prescription to individuals who are at least 18 years of age. The Rule, thus, may be moot as to these individuals because they will no longer present pharmacies with prescriptions for these

"contraceptives" in the Rule includes all FDA-approved contraceptives, which includes Emergency Contraceptives.  Plaintiffs allege that Emergency Contraceptives work with a significant abortifacient mechanism of action. Plaintiffs allege that they hold certain religious beliefs that prohibit them from dispensing Emergency Contraceptives.

The Plaintiffs allege that on the day of the announcement of the promulgation of the Emergency Amendment, Defendant Governor Blagojevich explained that the Emergency Amendment was prompted by actions of individual pharmacists in Chicago and elsewhere who had declined to fill prescriptions because of their religious and moral opposition to Emergency Contraceptives.

The Plaintiffs allege that in April 2005, shortly after the promulgation of the Emergency Amendment, the Plaintiffs and all other licensed pharmacists received a letter from the Department informing them of the provisions of the Emergency Amendment.  On or about April 26, 2005, Governor Blagojevich sent a letter to every licensed physician in Illinois. According to the Plaintiffs, Governor Blagojevich stated in his letter that the

---

drugs.  A prescription will still be required for individuals under the age of 18.  Thus, the Rule is still applicable in some circumstances.

Emergency Amendment was in response to the actions of individual pharmacists opposed to the use of Emergency Contraceptives. Governor Blagojevich's letter asked physicians to report any pharmacists who refused to fill a prescription for Emergency Contraceptives.

The Plaintiffs also allege that in April 2005, Governor Blagojevich sent a letter to the executive director of an organization called Family-Pac. In this letter, he stated that the Emergency Amendment was in response to actions by pharmacists who disagreed with these methods of birth control. The letter advised that should individual pharmacists refuse to fill birth control prescriptions, their employer would face significant penalties. The letter further stated that the Defendants intended to enforce the law by any and all steps necessary.

On April 29, 2005, the Joint Committee on Administrative Rules (Joint Committee) of the Illinois General Assembly published a proposed regulation similar to, and a companion to, the Emergency Amendment, which purported to be a permanent version of the Emergency Amendment. The proposed regulation concluded with a statement that those affected by this rulemaking include pharmacists. On August 25, 2005, the Joint Committee formally adopted the Rule, making permanent the provisions of

the Emergency Amendment.

On March 13, 2006, Governor Blagojevich allegedly reaffirmed publicly his position that the Rule was directed at individual pharmacists who object to dispensing certain drugs on moral grounds. According to the Amended Complaint, Governor Blagojevich further stated that pharmacists who hold such moral views should find another profession.

The statement accompanying the Rule states that the Rule addresses a critical public health care issue of access to prescription contraceptives by mandating that a pharmacy has a duty to dispense contraceptives without delay. 29 <u>Ill. Reg.</u> 13639. The Plaintiffs allege that the Rule does not include all pharmacies and does not require pharmacists always to dispense Emergency Contraceptives without delay. The Rule only addresses Division I pharmacies and so does not require hospitals or hospital emergency rooms to dispense Emergency Contraceptives. The Rule permits a pharmacy to delay in filling a prescription if the medication is not in stock. The pharmacy may follow its routine procedure for filling an out-of-stock prescription. The Rule further allows pharmacists to refuse to provide contraceptives under certain conditions based on the pharmacist's professional judgment. In addition, Plaintiffs claim that Defendant

Martinez and Governor Blagojevich both stated at a public hearing on February 15, 2006, that the Rule exempts Division I pharmacies that do not dispense contraceptives at all.

Walgreens and the Plaintiffs allege that, prior to the promulgation of the Emergency Amendment and the Rule, Walgreens had a policy called the Referral Pharmacist Policy.  Pursuant to the Referral Pharmacist Policy, Walgreens allowed its pharmacists nationwide to decline to fill a prescription based on moral or religious objections as long as the prescription could be filled by another pharmacist at that store or at a nearby pharmacy.  After the promulgation of the Emergency Amendment, Plaintiffs and Walgreens allege that Walgreens changed the Referral Pharmacist Policy in Illinois to require every pharmacist to fill prescriptions even if it violated his or her moral or religious beliefs.  The Plaintiffs and Walgreens allege that Walgreens still has the prior Referral Pharmacist Policy in place in every state other than Illinois.

Before the adoption of the Rule, the Discharged Plaintiffs notified Walgreens of their religious objections to dispensing Emergency Contraceptives and requested an accommodation of their religious beliefs. On or about September 13, 2005, Walgreens allegedly terminated the

employment of Plaintiff Antuma for refusing to dispense Emergency Contraceptives.  Walgreens alleges that, beginning in September 2005, the Department filed disciplinary actions against Illinois pharmacies, including Walgreens pharmacies, for violating the Rule because individual pharmacists had refused to dispense Emergency Contraceptives.

According to the Plaintiffs, in November 2005, Walgreens demanded that each of its pharmacists agree in writing to the new policy that required each of them to dispense Emergency Contraceptives.  The Plaintiffs allege that pharmacists who refused to sign the policy were placed on unpaid indefinite suspension.   This included Plaintiffs Menges, Quayle, and Hubble.  Plaintiff Muzzarelli was on personal leave at the time, but was denied permission to return to her employment because she would not agree to the new policy.

On December 1, 2005, Governor Blagojevich allegedly stated in a national television broadcast that Walgreens' actions were in compliance with the Rule and that, in terminating the Discharged Plaintiffs for asserting their religious objections to dispensing Emergency Contraceptives, Walgreens was following the law.  According to the Plaintiffs, Governor Blagojevich's spokespersons subsequently reiterated the Defendants'

interpretation of the Rule that pharmacists in Division I pharmacies have no choice but to dispense Emergency Contraceptives and that Walgreens' alleged firing of the Discharged Plaintiffs was appropriate.

The Plaintiffs allege that the decision by Walgreens to change its policy and practices of accommodating the religious and moral beliefs of its pharmacists in Illinois was motivated by the promulgation and enforcement of the Emergency Amendment and the Rule.  The Plaintiffs allege that Walgreens referred its employees to Governor Blagojevich's December 1, 2005, statement to explain its Illinois-specific policy which resulted in the indefinite suspension of the Discharged Plaintiffs.

Plaintiffs Lynch and Varner have not yet been subjected to an adverse employment action.  They allege, however, that they have been substantially burdened in the exercise of their religious beliefs by operation of the Rule. The Plaintiffs allege that this is especially true in light of the Defendants' interpretation of the Rule and the actions of Walgreens in suspending pharmacists who refuse to dispense Emergency Contraceptives due to their religious beliefs.

The Plaintiffs allege that they have been denied their fundamental constitutional and statutory rights and that the deprivation is continuing.

The Plaintiffs allege that the Rule requires employers to engage in religious discrimination and so is void under Title VII.  The Plaintiffs ask the Court to declare that the Rule violates the right to the free exercise of religion and violates Title VII's prohibition against any state law which purports to require or permit unlawful discrimination.  They further ask for preliminary and permanent injunctive relief to bar enforcement of the Rule.

Walgreens alleges that, in addition to the Department's enforcement actions, it has been subjected to several civil actions.  Several pharmacists who refused to dispense Emergency Contraceptives have filed wrongful discharge actions against Walgreens.  These pharmacists have also alleged that Walgreens violated the Illinois Health Right of Conscience Act ("Right of Conscience Act").  745 ILCS 70/1 et seq.  The Right to Conscience Act prohibits employers from discriminating against health care workers who refuse to provide any type of health care because of conscience.  745 ILCS 70/5.  Pharmacists have also filed charges of discrimination against Walgreens with the Equal Employment Opportunity Commission for violation of Title VII.  Memorandum of Law in Support of Motion to Intervene of Walgreen Co. (d/e 17) at 5-6.

Walgreens now asks for: (1) a declaratory judgment that the Rule

conflicts with Title VII, and that the Referral Pharmacist Policy complies with the Rule and Title VII; and (2) a permanent injunction enjoining enforcement of the Rule to the extent that the Rule prohibits Walgreens from implementing the Referral Pharmacist Policy in Ilinois.   The Defendants move to dismiss both the Amended Complaint and the Third Party Complaint.

ANALYSIS

A.   <u>FREE EXERCISE OF RELIGION</u>

The First Amendment protects the free exercise of religion.  State laws designed to discriminate against individuals because of their religious practices and beliefs are subject to strict scrutiny.   The state must demonstrate that the laws serve a compelling state interest and are narrowly tailored to advance that compelling interest.  <u>Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah</u>, 508 U.S. 520, 533 (1993).  Religious beliefs and practices, however, are varied and many laws unintentionally impinge on those beliefs and practices.  If every law that affected religion were subject to strict scrutiny, then virtually all laws would be subject to strict scrutiny.  The Supreme Court has, thus, determined that religiously neutral state laws of general applicability are not subject to strict scrutiny even if

13

they inadvertently affect someone's religious beliefs or practices. Employment Div., Dept. Of Human Resources of Oregon v. Smith, 494 U.S. 872 (1990).  The issue here is whether the Plaintiffs have alleged sufficient facts which, if true, would establish that the Rule is not a neutral regulation of general applicability, and if so, whether the Rule fails to meet the standard of strict scrutiny.

To determine whether the Rule is religiously neutral, the Court must initially look at the face of the Rule.  Church of the Lukumi Babalu Aye, 508 U.S. at 533-34.  The Rule, quoted above, is religiously neutral on its face.  There is no reference to religion in the Rule.

If a regulation is facially neutral, the Court must then go beyond the face of the Rule to determine the true object of the statute:

> Official action that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality.  The Free Exercise Clause protects against governmental hostility which is masked, as well as overt.  "The Court must survey meticulously the circumstances of governmental categories to eliminate, as it were, religious gerrymanders."

Id., at 534 (quoting Walz v. Tax Commission of City of New York, 397

U.S. 664, 696 (1970)).[2]  The alleged statements by Governor Blagojevich indicate that the objective of the Rule was to force individuals who have religious objections to Emergency Contraceptives to compromise their beliefs or to leave the practice of pharmacy.  Governor Blagojevich allegedly stated that the Rule was prompted by pharmacists who declined to fill prescriptions for Emergency Contraceptives because of their religious and moral opposition to Emergency Contraceptives.  He later allegedly stated that the Rule was directed at individual pharmacists who object to dispensing certain drugs on moral grounds and that such individuals should find another profession.

The Plaintiffs also allege that the effect of the Rule is consistent with Governor Blagojevich's statements about the object of the Rule.  Walgreens and the Plaintiffs allege that, as a direct result of the Rule, Walgreens changed its policies to no longer allow an employee/pharmacist who objected to the use of Emergency Contraceptives to refer a patient to another

---

[2]The Defendants cite Grossbaum v. Indianpolis-Marion County Bldg. Authority for the proposition that the personal motivations of the Governor are unimportant. Grossbaum, 100 F.3d 1287 (7th Cir. 1996). Grossbaum involved a free speech claim, not a free exercise claim. Id. at 1296, n. 9.  In the Free Exercise context, the Court must look beyond the face of the statute to determine its object.  Id. at 1292, n. 3.  Governor Blagojevich's statements regarding the object of the Rule are relevant.  The Plaintiffs allege that Governor Blagojevich and the other Defendants are responsible for promulgation, interpretation, application, and enforcement of the Rule.

pharmacist to fill a prescription for those drugs.  Walgreens, further, required its pharmacists to agree in writing to a new policy that required each of them to dispense Emergency Contraceptives.  Walgreens imposed these new policy changes only in Illinois, and only because of the Rule.  The Discharged Plaintiffs all allege that they lost their jobs specifically because the Rule forced them either to quit or to compromise their religious beliefs.

The Plaintiffs also allege that the Rule was not really designed to make Emergency Contraceptives available but that it was directed at them because of their beliefs.  The Plaintiffs allege that the Rule only affects Division I pharmacies.  The Rule does not cover hospitals or emergency rooms.  The Plaintiffs allege that many women rely on hospital emergency rooms to secure care.  If true, the fact that the Rule does not cover hospitals and emergency rooms is some proof that the object of the Rule is not to make Emergency Contraceptives available to everyone; rather, this allegation may indicate that the Rule is directed at pharmacists, such as the Plaintiffs, because they oppose the use of these medications on religious grounds.  See Church of the Lukumi Babalu Aye, 508 U.S. at 535-36.

The Plaintiffs also allege that the Rule allows Division I pharmacies to refuse to dispense Emergency Contraceptives on grounds other than the

pharmacist's religious beliefs.   Pharmacies can elect not to carry any contraceptives.  Plaintiffs allege that pharmacies may also elect not to keep Emergency Contraceptives in stock, and so, delay filling a prescription for Emergency Contraceptives in the same manner as for other out-of-stock medication.  The Plaintiffs allege that a delay caused by not carrying the medications in stock does not violate the Rule, but a delay caused by a pharmacist refusing to fill the prescription and asking a second employee/pharmacist at the same facility to fill the prescription violates the Rule.  This lack of consistency, if true, may further support the inference that the true object of the Rule is directed at the Plaintiffs, and other pharmacists, because of their beliefs.  See Id.

The Plaintiffs' allegations, if true, may establish that the object of the Rule is to target pharmacists, such as the Plaintiffs, who have religious objections to Emergency Contraceptives, for the purpose of forcing them either to compromise their religious beliefs or to leave the practice of pharmacy.  Such an object is not religiously neutral.  If so, the Rule may be subject to strict scrutiny.

The Court notes that many of the allegations may also be consistent with a finding that the object of the Rule is to make Emergency

Contraceptives generally available.   Governor Blagojevich's alleged comments, in particular, may only reflect the Governor's opinion that the burden on pharmacists, such as the Plaintiffs, is a necessary, incidental effect of making these medications generally available to the public.  The allegations that pharmacies may sometimes refuse to fill a prescription for Emergency Contraceptives for certain women may also be explained by competing health and safety concerns, rather than a goal of targeting pharmacists, such as the Plaintiffs, for their religious beliefs.  And the fact that the Rule does not apply to hospitals and emergency rooms may support an argument that the object of the Rule is not to force individual pharmacists who have religious objections to Emergency Contraceptives to compromise their beliefs or to leave the practice of pharmacy; if forcing such pharmacists out of the profession were the object of the Rule, then one would expect the Rule to apply to hospitals and emergency rooms as well. At this point, however, the Court must draw all inferences in favor of the Plaintiffs.  When viewed in that light, the allegations, if true, establish that the object of the Rule may not be religiously neutral.

The Plaintiffs further allege that the Rule is not generally applicable. The Rule is supposed to meet a critical need to make Emergency

Contraceptives available.  As explained above, however, the Plaintiffs allege that the Rule is underinclusive.  The Rule only applies to Division I pharmacies.  The Rule, therefore, does not apply to hospitals and, in particular, emergency rooms.  The Rule also allows Division I pharmacies to refuse to dispense Emergency Contraceptives or to delay dispensing them for reasons other than the pharmacist's personal religious beliefs.  These allegations, at least, create an issue of fact regarding whether the Rule is generally applicable.  If not, the Rule may again be subject to strict scrutiny.

If the Rule is subject to strict scrutiny, then, based on the Plaintiffs' allegations, the Rule may fail.  The Plaintiffs allege that the Rule is not narrowly tailored.  The purpose is to make Emergency Contraceptives available.  The Rule, however, only addresses the obligation of Division I pharmacies to make Emergency Contraceptives available.  As explained above, the Plaintiffs allege that the Rule is underinclusive because it does not require hospitals or emergency rooms to dispense these drugs, and does not require Division I pharmacies to dispense these medications without delay every time they are requested.  Thus, when viewed in the light most favorable to the Plaintiffs, the Plaintiffs sufficiently allege that the Rule fails to be narrowly tailored to advance a compelling state interest.  The Plaintiffs

state a claim that the Rule violates the First Amendment Free Exercise clause.

B.    <u>TITLE VII</u>

The Plaintiffs allege that the Rule is preempted by Title VII.  Title VII prohibits employment discrimination based on religion.  42 U.S.C. § 2000e-2(a)(1).  Religion means "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate . . . an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business."  42 U.S.C. § 2000e(j).  Title VII further provides that:

> Nothing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this subchapter.

42 U.S.C. § 2000e-7.  The Civil Rights Act also provides that:

> Nothing contained in any title of this Act shall be construed as indicating an intent on the part of Congress to occupy the field in which any such title operates to the exclusion of State laws on the same subject matter, nor shall any provision of this Act be construed as invalidating any provision of State law unless such provision is inconsistent with any of the purposes of this Act, or any provision thereof.

42 U.S.C. § 2000h-4.  The Plaintiffs allege that the Rule conflicts with Title

VII's prohibition against religious discrimination in employment because the

Rule requires employers, such as Walgreens, to discriminate against them

because of their religious beliefs concerning Emergency Contraceptives.  The

Plaintiffs, therefore, seek a declaratory judgment that the Rule violates Title

VII and is preempted.

The Supremacy Clause establishes that federal law is supreme.  <u>U.S.</u>

<u>Const.</u> Art. VI.  Thus, state laws and regulations are void, or are preempted,

if they conflict with valid federal law.  <u>California Federal Sav. and Loan</u>

<u>Ass'n v. Guerra</u>, 479 U.S. 272, 280-81 (1987).  Congress may elect to

preempt all state laws pertaining to an area within its delegated authority,

either expressly or by implication.  In such a situation, Congress has

preempted the field of regulation and legislation in an area, and states may

pass no laws regarding the area.  <u>Id.</u>  Sections 2000e(j) and 2000e-7, quoted

above, expressly state that Congress did not intend to preempt the field of

employment or discrimination law.  Thus, states may regulate in this area.

Federal law also preempts state laws that conflict with federal law.  If

a state law or regulation directly conflicts with federal law, the state law is

invalid.  <u>Id.</u> at 281.  The Plaintiffs allege that the Rule conflicts with Title

21

VII because the Rule requires pharmacies to discriminate against pharmacists because of their religious beliefs.  A rule that mandates religious discrimination by employers would conflict with Title VII and would be preempted.

The Plaintiffs' allegations state a claim.  First, § 2000e(j) defines religion to include all aspects of religious observances, practices, and beliefs that do not impose an undue hardship on employers.  The Plaintiffs allege that their opposition to Emergency Contraceptives is part of their religious beliefs.  The Plaintiffs also allege that accommodating their beliefs does not work an undue hardship on their employers.  An undue hardship is anything more than a de minimus burden on the employer. Reed v. Great Lakes Companies, Inc., 330 F.3d 931, 935 (7th Cir. 2003).  The Plaintiffs allege that their employers formerly accommodated their beliefs.  Walgreens continues to accommodate pharmacists' religious beliefs about Emergency Contraceptives in every state except Illinois.  When read in the light most favorable to the Plaintiffs, these allegations indicate that pharmacies can accommodate the Plaintiffs' religious opposition to Emergency Contraceptives without incurring any significant costs.  If true, the burden on pharmacies to accommodate the Plaintiffs' beliefs may be de minimus.

22

If the Plaintiffs can prove that the burden of accommodating their beliefs is so slight, then the Plaintiffs' religious beliefs in opposition to Emergency Contraceptives may be within Title VII's definition of religion.  At the pleading stage, the Court must accept the Plaintiffs' allegations as true and assume that they can meet this burden.

The Plaintiffs also allege that the Rule requires pharmacies to discriminate against the Plaintiffs because of their religion.  The Plaintiffs allege that the Rule prohibits any accommodation of their religion; the Plaintiffs must compromise their religious beliefs or leave the profession. When read in the light most favorable to the Plaintiffs, the allegations indicate that the Rule may require pharmacies either to create a religiously hostile work environment or to discharge pharmacists because of the pharmacists' religion.  If the Plaintiffs can establish their allegations, the Rule may conflict with Title VII and may be preempted.  The Plaintiffs at this stage state a claim.

The Defendants argue that there is a strong presumption against preemption of state health and safety regulations.  <u>Hillsborough County, Fla. v. Automated Medical Laboratories, Inc.</u>, 471 U.S. 707, 715 (1985). The Defendants note that this presumption will be overcome only where it

is the "clear and manifest purpose of Congress" to preempt such laws.

Garcia v. Volvo Europa Truck, N.V., 112 F.3d 291, 294 (7th Cir. 1997).

The Court agrees that this presumption exists, and the Plaintiffs may have a very difficult time overcoming it. The Amended Complaint, however, alleges that the Rule is not a health and safety regulation, but rather, a regulation targeted at the Plaintiffs because of their religious beliefs which has, as its true object, the goal of forcing them to either compromise their religious beliefs or leave the practice of pharmacy. At this point, the Court must accept the Plaintiffs' allegations as true. If the Plaintiffs can prove these allegations, they may be able to overcome the presumption against preemption.

The Defendants also argue that the Rule does not require pharmacies to force pharmacists to fill a prescription for Emergency Contraceptives. The Defendants argue that pharmacies are free under the Rule to let pharmacists refuse to fill Emergency Contraceptives prescriptions as long as another pharmacist is present who will fill the prescription. The Plaintiffs' allegations do not support that interpretation. The Plaintiffs allege that Defendant Governor Blagojevich and the other Defendants are responsible for the promulgation, interpretation, application, and enforcement of the

Rule.  The Plaintiffs further allege that Governor Blagojevich stated that a pharmacy would be subject to stiff penalties if an individual pharmacist refused to fill a prescription.[3]   The Plaintiffs also allege that Governor Blagojevich stated that Walgreens was following the Rule when it required all of its pharmacists to agree in writing to dispense Emergency Contraceptives.  These allegations are inconsistent with the Defendants' contention that the Rule does not require pharmacies to force all pharmacists to dispense Emergency Contraceptives.  At this point, the Court must accept the Plaintiffs' allegations as true.[4]

The Defendants also argue that the Plaintiffs' religious beliefs about Emergency Contraceptives are not within Title VII's definition of religion because accommodating those beliefs imposes an undue burden on pharmacies.  Whether accommodating the Plaintiffs' beliefs imposes an undue burden is an issue of fact.  The Plaintiffs' allegations, if true, could

---

[3]That allegation may indicate that the "without delay" requirement of the Rule prohibits any pharmacist from refusing to fill a prescription and referring the matter to another pharmacist because the referral would cause an impermissible delay under the Rule.

[4]Defendants' arguments, however, may suggest a basis for possible amendment of the Rule to clarify its object and application.  The parties are reminded that the Court would, if requested, refer the case to U.S. Magistrate Judge Cudmore to explore settlement possibilities that would be consistent with individual constitutional rights.

show that accommodating these beliefs imposes only a <u>de minimus</u> burden on the Plaintiffs' employers. If so, the Plaintiffs' religious beliefs about Emergency Contraceptives would fit within Title VII's definition of religion. The Court agrees that this point may be very difficult to prove; accommodating the Plaintiffs' beliefs may result in some costs on their employer, either in additional staffing or lost business. Any such costs may be more than <u>de minimus</u>. <u>See</u> <u>Trans World Airlines, Inc. v. Hardiman</u>, 432 U.S. 63, 84 (1977); <u>Endres v. Indiana State Police</u>, 349 F.3d 922, 925 (7th Cir. 2003). At the pleading stage, however, the Court must assume that the Plaintiffs can prove their allegations. The Plaintiffs state a claim.

For the same reasons, Walgreens states a claim for a declaratory judgment regarding whether the Rule is preempted by Title VII. Walgreens also states a claim for injunctive relief to enjoin the enforcement of the Rule. The Defendants argue that the request for an injunction is barred by the Eleventh Amendment because this Court cannot define state law and enjoin state officials to follow its interpretation of state law. <u>Pennhust State School & Hosp. v. Halderman</u>, 465 U.S. 89, 104 (1984). This Court, however, has the authority to interpret the Rule for the purpose of declaring whether the Rule violates Title VII. <u>Fitzpatrick v. Bitzer</u>, 427 U.S. 445, 457

26

(1976).  If the Rule violates Title VII, the Court can enjoin its enforcement. The Court, therefore, has jurisdiction to grant Walgreens injunctive relief. These aspects of the Third Party Complaint state a claim.

Walgreens also asks for declaratory judgments that its Pharmacist Referral Policy complies with Title VII and with the Rule.  Walgreens does not allege that the Defendants contend that its Pharmacist Referral Policy violates Title VII.  Walgreens, therefore, has failed to allege that a definite and concrete controversy exists to entitle it to a declaratory judgment on this question.  Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941); 28 U.S.C. § 2201.

Walgreens also asks for a declaratory judgment that the Pharmacist Referral Policy complies with the Rule.  The Defendants argue that the Eleventh Amendment bars this claim.  The Court agrees.  The Court cannot enter a binding judgment on state officials declaring the meaning of state law and ruling on whether a particular practice conforms to state law, effectively requiring them to enforce state law in accordance with that interpretation.  Pennhurst, 465 U.S. at 104.  The Court has jurisdiction, however, to determine whether the Rule violates Title VII (a federal law) and whether to enjoin enforcement of the Rule on that basis.  This Court

cannot order state officials to comply with <u>state</u> law, but it can order state officials to comply with <u>federal</u> law.

THEREFORE, the Defendants' Motion to Dismiss the Amended Complaint (d/e 13) is DENIED.  Defendants' Motion to Dismiss Walgreens' Third Party Complaint (d/e 27) is ALLOWED in part and DENIED in part.  The Court dismisses Walgreens' request for declaratory relief to determine whether its Pharmacist Referral Policy complies with Title VII or the Rule.  The rest of the Third Party Complaint is not dismissed.  The Defendants' Motion to Dismiss the original Complaint (d/e 9) is DENIED as moot.  The Defendants are directed to answer the Amended Complaint and the Third Party Complaint by September 30, 2006.

IT IS THEREFORE SO ORDERED.

ENTER:   September 6, 2006.

FOR THE COURT:

s/  Jeanne E. Scott

JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE